UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Patricia A. Palladino,
     Plaintiff

     v.                           Case No. 23-cv-0261-SM
                                      Opinion No. 2023 DNH 091

Carrington Mortgage Services, LLC,
     Defendant

# O R D E R

Pro se plaintiff Patricia Palladino originally brought this suit in the New Hampshire Superior Court, seeking to enjoin the planned foreclosure sale of her home. After the state court granted her temporary injunctive relief, defendant, Carrington Mortgage Services, removed the proceeding to this court. Pending before the court are defendant's Motion to Dismiss and its Emergency Motion to Dissolve Injunction. Also pending is plaintiff's Motion for Preliminary Injunction.

For the reasons given, defendant's motions are denied. Plaintiff's motion for injunctive relief will be treated as including a request for a temporary restraining order and, as such, it is granted. The court will conduct a hearing on Wednesday, August 16, at 10:00 AM to hear argument and take

evidence on plaintiff's request for preliminary and permanent injunctive relief.  <u>See</u> Fed. R. Civ. P. 65(a)(2).

## Background

Accepting the complaint's factual allegations as true – as the court must at this juncture – the relevant background is as follows.[1]  In or around 2014, Bank of America sold plaintiff's promissory note and the mortgage deed to plaintiff's home securing that note to Carrington Mortgage Services ("CMS").  During that process, however, the amount held in escrow on plaintiff's account was not correctly reported.  Neither Bank of America nor CMS was able/willing to correct that meaningful error and it eventually led to CMS determining, incorrectly, that the loan was in default.  According to plaintiff, this was because when she made her regular loan payments, CMS directed a portion of each payment to the escrow account.  That, in turn, meant that each payment she made was seen by CMS as less than the amount she was contractually obligated to make.  Eventually, plaintiff says, she was forced to file for chapter 13 bankruptcy protection.  She says she "settled with a loan modification and

---

[1]   Given plaintiff's pro se status, the court has drawn the relevant facts from her original state court petition to enjoin foreclosure (document no. 1-1), as well as her objection to defendant's motion to dismiss (document no. 14), and her supplement to that objection (document no. 16).

the bankruptcy was dismissed."  Objection to Motion to Dismiss
(document no. 14) at 3.


 In 2021, plaintiff says that she and her husband applied to
a different lender to refinance the CMS mortgage loan, but CMS's
errors in handling their account – including CMS's improper
failure to report plaintiff's timely loan payments to the three
major credit reporting bureaus - thwarted those efforts.

> The rates were low and our equity was high and our
> payment history was good (I can supply copies of my
> bank statements showing all our payments).  The
> mortgage company that we applied to denied us <u>because
> our mortgage did not show on any of the 3 major credit
> bureaus, Trans Union, Equifax or Experian</u>.  We then
> tried to refinance with CMS and they themselves would
> not refinance our mortgage because they themselves did
> not report our mortgage to the 3 major credit bureaus.
> CMS stated that we needed to "reaffirm" our mortgage
> from the bankruptcy in 2019.  Reaffirmation is for
> chapter 7 not 13 and our bankruptcy was dismissed, so
> no reaffirmation was needed.  We had to jump through
> hoops with CMS.  They said they would refinance us (I
> have this statement in an email from CMS
> representative Lorena West, I can provide a copy of
> this) if we could get "nontraditional" credit applied
> to our credit reports (when asked what is
> nontraditional credit, we were told for example
> utilities, auto insurance, etc.).  Instead of CMS just
> simply posting all of our payments [to the credit
> reporting agencies], we had to go through an arduous
> process.
>
> We contacted all 3 bureaus to find out how to do this.
> All three said that they do not put "nontraditional"
> credit on reports.  Then CMS stated to get a years'
> worth of payment history from nontraditional entities
> to prove our credit worthiness.  We got T-Mobile,
> State Farm and Comcast payment statements to them.  We

then sent letters and copies of our bank statements
with our mortgage payments highlighted and circled to
TransUnion, Experian and Equifax (cc'd CMS) asking
them to update our reports with the mortgage payments.
Trans Union replied stating that they couldn't update
our report because CMS was not even on our report to
update.

During this time we were made to believe we were being
refinanced if we did all this work, so we held our
payments thinking we would be signing papers.  Once
again we were forced to apply for a modification
because we fell behind due to all this back and forth
and stalling from CMS.  On April 25, 2022 we were
notified by mail that we were eligible for a loan
modification and to begin our Trial Payment Plan
6/1/2022.  First payment of $2256.70 due on June 1,
2022, second payment of $2256.70 due on 7/1/2022, and
third payment of $2256.70 due 8/1/2022.  We paid as
agreed.  . . . . We were told we would hear something
before our last payment of the 3-payment series.  We
**never** received any confirmation of denial letters from
CMS.  We called in to CMS and were told that a packet
was mailed.  We NEVER received this packet.  I clearly
made the CMS representative aware of this.

Id. at 3-4.  Plaintiff says she and her husband made all
required payments of $2,256.70 to CMS under the loan
modification trial payment plan – six in total, from May through
October of 2022.  When she called CMS to make her November
payment, however, she was told that CMS would not accept the
payment because she had failed to return to CMS a signed copy of
the loan agreement, so CMS had sent the matter to its
foreclosure department.  CMS has rescheduled the foreclosure
sale of plaintiff's home to Monday, August 7, 2023.

According to CMS, it sent plaintiff a loan modification agreement in late September, 2022.  In the accompanying cover letter, CMS claims to have informed plaintiff that she had to sign and return that agreement on or before November 10, 2022. It says plaintiff failed to do so.  Plaintiff, on the other hand, vehemently denies ever receiving that loan modification agreement.  And, given her assertion that she made regular payments during (and beyond) the "trial period" as instructed by CMS, it does seem odd to suggest that plaintiff would simply neglect to return the completed loan modification agreement if she had actually received it.  After all, she pursued the loan modification to save her home and made the requisite initial payments.

## Discussion

I.  <u>Defendant's Motion to Dismiss</u>.

Plainly, plaintiff's receipt of the final loan modification agreement for signature and return is one of several genuinely disputed material facts.  But, accepting plaintiff's factual allegations as true, CMS erred in declaring plaintiff's note in default and it erred in commencing foreclosure proceedings.

Plaintiff's complaint and subsequent filings – again, if credited as true - paint a decidedly unflattering picture of

CMS.  At a minimum, those documents raise questions about whether, during the course of its dealings with Palladino, CMS honored its common law obligations of good faith and fair dealing implied in every New Hampshire contract.  CMS's conduct may also implicate potential claims under various federal consumer protection statutes such as the Real Estate Settlement Procedures Act, Regulation X, and the Truth in Lending Act, as well as a common law claim for breach of contract.

Moreover, if CMS's alleged failure to report plaintiff's payments to the credit reporting bureaus – whether intentional or merely negligent – caused plaintiff to miss an opportunity to refinance her promissory note at a more favorable rate, that could certainly be problematic for CMS.  Finally, it likely goes without saying that if a lender were shown to have ignored, delayed, thwarted, or otherwise failed to honor its commitment to enter a loan modification agreement with a borrower, such conduct might warrant an award of fees or other sanction if the record reveals that such practices forced plaintiff to file suit simply to obtain relief that should have been afforded in due course.  See generally Harkeem v. Adams, 117 N.H. 687, 691 (1977).

At this juncture, the court concludes that plaintiff's complaint adequately alleges the essential elements of viable causes of action. Consequently, defendant's motion to dismiss must, necessarily, be denied.[2]

II. <u>Plaintiff's Motion for Preliminary Injunction</u>.

CMS has rescheduled a foreclosure sale of plaintiff's home to take place in less than one week. Plaintiff seeks to enjoin that foreclosure – relief the court will treat as including a request for a temporary restraining order. CMS has received notice of plaintiff's request and filed a written objection (document no. 22), which has been fully considered. CMS has not, however, requested a hearing on the matter, nor has it given any indication that it wishes to present any other relevant evidence. <u>See generally</u> Fed. R. Civ. P. 65(b).

Assuming the truth of plaintiff's claims, CMS refused to accept plaintiff's timely mortgage payment in November of 2022, improperly deemed her loan to be in default, and wrongfully

---

[2]   Defendant notes that similar litigation between the parties was recently dismissed by the state court. It does not, however, explain the legal significance of that dismissal. It is possible that issues arising under the <u>Rooker-Feldman</u> doctrine, and/or the res judicata or collateral estoppel doctrines are present in this case. But, as noted, defendant has yet to present any such argument.

scheduled the impending foreclosure sale of her home.  On the
basis of those assertions, as well as the other allegations set
forth in the complaint, the court concludes that plaintiff will
suffer immediate and irreparable injury if the scheduled
foreclosure is not postponed.  Moreover, assuming the truth of
plaintiff's allegations, she has established a likelihood that
she will succeed on the merits of one or more of her claims
against CMS, the harm to her if she is denied the requested
relief exceeds the harm to CMS, and the public interest will not
be adversely affected if the court grants the requested relief.

     Accordingly, the plaintiff is entitled to a temporary
restraining order and CMS, its agents, and its employees are
enjoined from proceeding with the foreclosure sale scheduled for
August 7, 2023, pending further order of the court.

### Conclusion

     Liberally interpreting Palladino's pro se complaint and
related filings, the court concludes that it adequately alleges
the essential elements of viable claims.  Defendant's motion to
dismiss (**document no. 8**) is, therefore, denied.  Defendant's
Emergency Motion to Clarify (**document no. 18**) is denied as moot.
Plaintiff's Motion to Consolidate this case with a related state

court action (**document no. 20**) is also denied as moot (the state court dismissed that case on July 20, 2023).

As discussed above, plaintiff's motion for Preliminary Injunction (**document no. 19**) is construed as a motion for a temporary restraining order and as such, it is granted, subject to the terms outlined above.  The Clerk of Court shall schedule a hearing on plaintiff's request for a preliminary and permanent injunction for **10:00 AM, Wednesday, August 16, 2023**.  See Fed. R. Civ. P. 65(a)(2).  At that hearing, pro se plaintiff should be prepared to try her case and present all testimonial and documentary evidence supportive of her claims.

   **SO ORDERED.**

            _____
            Steven J. McAuliffe
            United States District Judge

August 2, 2023

cc:  Patricia A. Palladino, pro se
   Counsel of Record